## JOSEPHUS A. LAYCOCK v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

### In Banc, November 30, 1921.

1. **NEGLIGENCE: Passenger: Irregular Movement of Street Car: Pleading.** There is more or less irregularity in the movement of all electrical cars which is not due to negligence on the part of those operating them, and where plaintiff was safely upon the car as a passenger, and was not injured while getting on or leaving it, but while riding thereon, he must, in order that his petition may state a cause of action, allege and prove that the jerk of the car which resulted in his injury was an unusual or extraordinary movement.

2. ——: ——: **Jerks: Crowded Car: Breaking Window.** An allegation that defendant moved a crowded electric street car with a sudden and unexpected jerk with such force as to throw another passenger against the glass of the entrance door, breaking the glass and causing broken pieces to strike plaintiff in his eyes and face, greatly injuring him, is, in substance and effect, an allegation of facts showing an extraordinary and unusual movement of the car, and is, after verdict, a sufficient statement of a cause of action.

Laycock v. United Railways Co.

3. ——: ——: ——: **Cable Cars and Freight Trains.** There is a wide difference between the jerks and lurches of cable cars and freight trains necessarily incident to their operation and the jerks and lurches incident to the operation of an electric street car, and the cases excusing the irregularity of their movements are not authority for excusing the unusual and extraordinary jerks of electric street cars.

4. ——: ——: ——: **Instruction: Following Petition.** Where the facts stated in the petition constituted a sufficient allegation that plaintiff's injuries were caused by an unusual jerk and extraordinary movement of the street car, an instruction which follows the petition and requires the jury to find the same facts is sufficient and requires them to find that the jerk was unusual and extraordinary.

5. **MEASURE OF DAMAGES: Special: Loss of Earnings: Allegation and Instruction.** An allegation that ''prior to his injury plaintiff was engaged in the business of buying and selling brooms at wholesale, and was a salesman of merchandise to the retail trade, and earned an average of five dollars per day; that since his injury he has been unable to attend to his business, and has lost his earnings; that his earning power has been permanently impaired; that he will continue to lose the earnings of his business; that he will be permanently unable to follow his former business, or any other business'' simply puts a limit on plaintiff's loss of earnings prior to the filing of his petition to five dollars per day, but puts no such limit upon his future earnings; and an instruction telling the jury that in estimating his damages they will take into consideration ''the reasonable value of plaintiff's time which he has lost as a direct result of said injury, whether his earning capacity has been reduced as a direct result of said injuries, and what effect his injuries will have on his earning capacity in the future'' was not erroneous, although it placed no specific limit upon the amount that might be allowed for loss of time or earnings.

6. ——: ——: **Loss of Time: Less Than Alleged: Instruction.** Where the petition fixed the value of plaintiff's time from the date of his injury to the filing of the petition at five dollars a day, and the evidence was that he earned only four dollars a day, an instruction telling the jury that in estimating plaintiff's damages they should take into consideration ''the reasonable value of his time which you may believe from the evidence the plaintiff lost as a direct result of said injury,'' without mentioning the amount, was not erroneous. Where the evidence shows that the value of earnings lost or of time lost is less than the amount stated in the petition, the presumption is that the jury, absent anything to the contrary appearing, obeyed their oaths and brought in a verdict according to the evidence. It is necessary that the instruc-

tion limit the amount of such special damages only in case the amount as shown by the evidence exceeds or may exceed the amount specified in the petition. [Approving ruling of Kansas City Court of Appeals in Campbell v. Chillicothe, 175 Mo. App. 436, and numerous other cases, and disapproving contrary ruling by St. Louis Court of Appeals.]

7. ————: **Double Recovery: Loss of Time and Loss of Earnings.** Loss of time and loss of earnings do not constitute separate and distinct items of loss. An instruction permitting plaintiff to recover for time lost and reduced earning capacity in the past does not allow a double recovery, and is not erroneous.

8. **EVIDENCE: Lost Earnings: No Books.** The mere fact that plaintiff kept no books and could not tell precisely the net profits of his work or business should not deprive him of any just claim for loss of time or earnings. Where plaintiff was incapacitated from pursuing his ordinary avocation, which was that of a wholesale dealer in brooms in a small way, evidence that he purchased brooms from manufacturers and went about and took orders for them and delivered them to purchasers, and estimated that his profits or earnings in said business for several years prior to his injury had been one hundred dollars per month, though he kept no books, the loss being personal to himself because he alone conducted the business, is not speculative, and is not incompetent.

9. ————: **Conclusion of Witness: Jerk of Car: No Motion to Strike Out.** To sustain an objection to the testimony of a witness that there was no jerking of the street car sufficient to throw down a passenger and that it started forward in the ordinary way, that such testimony was a conclusion of the witness, made after numerous inquiries calling for such conclusion were made and answered, and followed by no motion to strike out, is not reversible error, the testimony being competent.

10. **EXCESSIVE VERDICT: Loss of Eye: $5,000.** Plaintiff was fifty-three years of age; he testified that when a passenger was thrown by the jerk of the street car against the entrance door, broken pieces of glass struck him in the face and right eye, knocking him blind and producing intense pain; that he was immediately treated by an oculist, but the right eye, previously straight, since the accident is turned to one side, producing a disfigurement, and its sight so destroyed that he cannot read with it; that the sight of the left eye has rapidly failed, and both eyes are in a state of severe pain, constantly inflamed and feverish, and interfering with normal sleep; numerous lay witnesses testified that his right eye, prior to the accident, had been straight, and others that it was previously defective; his expert oculist testified that the right

eye might have been diverted from its natural position by the injury; and defendant's expert, who was the oculist first consulted, testified that when plaintiff came to him he found no particles of glass or injury to the right eye and that it was not then diverted, but this witness had been the regular physician for defendant and at the time plaintiff came to him was being occasionally consulted as an oculist by defendant, and while treating plaintiff communicated his condition to defendant, but did not inform plaintiff of such facts and plaintiff was not aware of them. *Held,* that in view of ·the conflicting testimony, the court cannot say that the verdict for five thousand dollars was so excessive as to indicate the jury were not governed by the weight of the evidence as they honestly believed it to be.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Albert D. Nortoni, Charles W. Bates, T. E. Francis,* and *Thomas Bond* for appellant.

(1) The petition fails to state a cause of action, in that it contains no averment that the jerk which is alleged to have caused the accident, was unusual to the ordinary operation of the street car. Bartley v. Street Ry., 148 Mo. 124, 139; Saxton v. Railroad, 98 Mo. App. 494, 503; Bobbitt v. Street Ry., 169 Mo. App. 424. (2) Instruction 1 is erroneous in that it permits a verdict for the plaintiff without requiring the jury to find from the evidence that the jerk which is alleged to have caused the accident, was unusual to the ordinary movements of the car. Cases cited above. (3) Instruction 3 is erroneous in that it fails to limit the damages which the jury are authorized to award for loss of time and impaired earning capacity, past and future, to the amount claimed in the petition. Finley v. United Rys. Co., 238 Mo. 6, 14; Radtke v. Basket & Box Co., 229 Mo. 1, 21; Tinkle v. Railroad, 212 Mo. 445, 471; Smoot v. Railroad, 194 Mo. 513, 521. (4) Instruction 3 is also erroneous because it permits a double recovery for a

single loss, in that it permits the jury to compensate the plaintiff for loss of time and also impaired earning capacity in the past, when the one necessarily includes the other. Fargy v. Rutledge, 180 S. W. 90; Western & Atlantic Railroad v. Smith, 88 S. E. 983; St. Louis Southwestern Ry. Co. v. Smith, 63 S. W. 1064. (5) The court erred in not sustaining defendant's objections to the testimony offered to show loss of profits, for the reason that said profits were speculative, and the testimony as to the amount thereof was uncertain, and the court erred in directing the jury in instruction 3 that they might compensate plaintiff for loss of time and earnings, for the reason that there was no competent evidence showing any such loss. Morrow v. Railroad, 140 Mo. App. 200, 213; Reynolds v. Tel. Co., 81 Mo. App. 223, 231; Viernow v. Carthage, 139 Mo. App. 276, 281; Cravens v. Hunter, 87 Mo. App. 456, 465; Burdall v. Johnson, 122 Mo. App. 119; Wilt v. Hammond, 179 Mo. App. 406, 418. (6) The court erred in sustaining plaintiff's objection to the testimony of witness Maag to the effect that the motion of the car was not sufficient to throw a man, or to overbalance a man. Such statements of eye-witnesses who observed the motion of the car and its effect on passengers thereon, are statements of fact, and are not incompetent under the opinion rule. 17 Cyc. 81 to 98; Denver, T. & Ft. W. Ry. Co. v. Ditch Co., 35 Pac. 910. (7) We respectfully invite the court's attention to the facts and rulings in the following cases, which we cite in support of our contention on the main question in this case, that is, that the petition was insufficient, our demurrer to the evidence should have been sustained and also plaintiff's first instruction was wholly insufficient, misleading and misdirection. Hite v. Met. St. Ry. Co., 138 Mo. 132; Bartley v. Met. St. Ry. Co., 148 Mo. 124; Hedrick v. Mo. Pac. Ry. Co., 195 Mo. 104; Tickell v. St. Louis & Iron Mt. Ry. Co., 149 Mo. App. 648; Guffey v. Hannibal & St. Joe Ry. Co., 53 Mo. App. 462.

Sale·& Frey and Fauntleroy, Cullen & Hay for respondent; Ralph T. Finley of counsel.

(1) The petition does not limit plaintiff's damages for loss of earnings. The recital that "prior to his injury he earned an average of five dollars per day" is merely a statement of what plaintiff had previously earned and is not alleged to be plaintiff's damages for either past or future loss of earnings. Barnes v. Houchin, 195 S. W. (Mo. App.) 61; Bible v. Railroad, 169 Mo. App. 525. (2) Even though it be held that plaintiff's petition limited the amount of his past earnings, the instruction on the measure of damages is, nevertheless, not erroneous, since all the evidence in the case showed that his earnings were less than the amount claimed in the petition. Shinn v. United Rys. Co., 248 Mo. 173; Campbell v. Chillicothe, 175 Mo. App. 436, 439; Summers v. Railroad, 187 S. W. 125, 127; Bell v. United Rys. Co., 183 Mo. App. 334; Morris v. K. C. Rys. Co., 223 S. W. 784; Hance v. United Rys. Co., 223 S. W. 123; Erdmann v. United Rys., 174 Mo. App. 245; Lindsay v. Kansas City, 195 Mo. 180; Sang v. St. Louis, 262 Mo. 454; State ex rel. v. Reynolds, 257 Mo. 19; Carter v. Wabash, 182 S. W. 1061. The defendant did not ask a more definite or specific instruction as to the measure of damages. It thereby waived all right to claim plaintiff's instruction on the measure of damages erroneous for indefiniteness. King v. St. Louis, 250 Mo. 514; Powell v. Railroad, 164 S. W. (Mo.) 638; Browning v. Railroad, 124 Mo. 55; Waddell v. Railroad, 213 Mo. 20. (3) Plaintiff's instruction on the measure of damages did not permit a double recovery. Reynolds v. St. Louis Transit Co., 189 Mo. 408. A recovery for loss of time and impairment of earning capacity is not double. 17 C. J. 781.

SMALL, C.—This case, a suit for personal injuries claimed to have been received by plaintiff as a passenger

from a sudden jerk of defendant's car, was tried in the Circuit Court of the City of St. Louis. Judgment was rendered for plaintiff, and defendant appealed to the St. Louis Court of Appeals, which certified the case to this court for final determination, because said Court of Appeals deemed its decision herein contrary to the decision of the Kansas City Court of Appeals in Campbell v. Chillicothe, 175 Mo. App. 436, on the instruction on the measure of damages given for the plaintiff.

I. First: As to whether the petition fails to state a cause of action, and does not allege, in substance, that the plaintiff was injured by an unusual or extraordinary movement or jerk of the car.

Pleading.

It is true, as contended by appellant, that in this case the plaintiff, being safely upon the car as a passenger and not claiming to have been injured while he was getting on or leaving the car, but while he was riding thereon, in order to have a cause of action against defendant must allege and prove that the jerk of the car complained of was an unusual or extraordinary jerk, because all cars are subject, in their operation, to more or less irregularity in movement, without any negligence on the part of the defendant or its employees in charge of such cars.

The petition, alleges as follows: "Plaintiff says that the Manchester car, upon which he was received as a passenger by the defendant company, was crowded with passengers at the time he got on the car at Jefferson and Chouteau avenues; that all the seats were occupied by passengers, and the aisle in said car was crowded with passengers, and the rear platform of said car was also crowded. Plaintiff paid his fare as a passenger to the conductor of said car by delivering to him the transfer ticket, and was standing on the rear platform of said car while the car proceeded on its way along the usual route of said car, and between Vandeventer Avenue and Kingshighway, when the defendant's servants in charge of said car negligently and carelessly per-

mitted and allowed the same to move with a sudden and unexpected jerk, thereby pulling or driving the car forward with such force as to throw someone in the inside of the car against the glass entrance door breaking the glass therein, and causing the same to strike plaintiff in the eyes and in his face, greatly injuring him.''

We think these allegations are sufficient, after verdict, to state a cause of action. To move a crowded electric street-car with a sudden and unexpected jerk with such force as to throw some one inside of the car against the glass entrance-door, breaking the glass therein and causing the same to strike plaintiff in the eyes and in his face, greatly injuring him, is, in substance and effect, to allege facts showing an extraordinary and unusual movement of such a car. The cases cited by learned counsel for appellant, of jerks, of no greater force than that alleged in the petition, on cable cars or freight trains, do not apply to this case, because there is a wide' difference between· the jerks and lurches of cable cars and freight trains necessarily incident to their operation and the jerks and lurches incident to the operation of an electric street car. The case cited of a cable car, to-wit, Hite v. Met. St. Ry. Co., 130 Mo. 132, shows that it was impossible to operate the cable car around the 12th Street Loop in Kansas City without making irregular and violent jerks sufficient to throw a person from the car, owing to the impossibility of regulating the slack in the cable and other mechanical devices under the circumstances therein shown. Obviously, the cases of injuries to passengers on a freight train by lurches in its movement, as in Hedrick v. Railroad, 195 Mo. 104, can have no relevancy to this case. Such violent jerks, as described in the petition in this case, might be usual and ordinary in the operation of a cable car or a freight train, but, in our judgment, not ordinary or usual, but extraordinary or unusual, in the operation of a crowded electric street car. Electric street cars are obviously much more regular, stable and uniform in their movements, than cable cars or freight trains.

We rule, that the petition stated a cause of action.

II.  Did plaintiff's main instruction require the jury to find that the jerk was unusual or extraordinary? Said instruction required the jury to find "that [while] said car was proceeding on its way along the usual route of said car between Vandeventer Avenue and Kingshighway defendant's servants in charge of said car caused or permitted said car to be suddenly and violently started and jerked forward with such force as to throw someone who was riding in the inside of said car against the glass entrance-door, and that in so starting said car forward (if you so find) said servants acted negligently, as that term is defined in another instruction; that the glass was thereby broken from said door, and that some of the glass struck the plaintiff in his eyes and injured him, then your verdict will be in favor of the plaintiff and against the defendant."  This instruction follows the allegations of the petition and the petition being sufficient, it follows that this instruction is also sufficient (if the facts therein submitted to the jury are found to be true), to constitute an unusual and extraordinary movement of said car, which rendered the defendant liable to plaintiff for any injury he sustained therefrom.  It is not denied that the plaintiff's evidence tended to show the facts alleged in the petition and hypothecated in said instruction.  As stated by the Court of Appeals in its opinion:

"The car in question was of the pay-as-you-enter type.  The plaintiff boarded the car at Jefferson Avenue, and on account of the crowded condition of the car stood on the back platform close to the entrance door which led from the platform into the body of the car.  Plaintiff testified that when the car arrived west of Vandeventer Avenue and somewhere between there and Kingshighway and as he was standing close to this entrance door, the car gave a terrific lurch and that there was a man standing just inside of the entrance door with his back towards the door and about eight or ten inches from the door, and as the car gave the lurch, it threw this man backward off of his feet, causing him to fall against the

*Instruction.*

glass in the door, breaking it into many fragments, some of which fell into plaintiff's face and eyes.  Plaintiff introduced a passenger on the car who testified as to the lurch, stating that the car gave a lurch and started too fast, throwing a man on the inside against the door, breaking the glass and causing it to fall against the plaintiff.  Another witness for plaintiff testified that as the car started up suddenly a man inside was thrown against the door, breaking the glass.

"Defendant's evidence tended to show that as the street car was going westwardly in the usual manner and that just west of Vandeventer Avenue and while running over a switch which intersected the track, a man was entering the car carrying bundles in his arms and the bundles went against the door, breaking the glass; that there was no unusual movement of the car and no sudden or unexpected jerk, and that the only motion of the car was the ordinary motion necessarily incident to the operation of the street car over the switch."

III.  Is plaintiff's instruction numbered 3 on the measure of damages erroneous, because it contains no limit as to the amount of special damages for loss of earnings?  Said instruction as to such loss of earnings was as follows: "In estimating such dam-

**Measure of Damages.**  ages to which plaintiff may be entitled, if any, you may take into consideration   .   .   . the reasonable value of plaintiff's time which you may believe from the evidence the plaintiff lost, if any, as a direct result of said injury, if any, whether his earning capacity has been reduced, as a direct result of said injuries, if any, and what effect, if any, his injuries, if any, will have on his earning capacity in the future."  There was no specific limitation in the instruction as to the amount that might be allowed the plaintiff for his loss of time and loss of earning capacity.  The allegations in the petition, as to the loss of earnings, are as follows: "Plaintiff says, *that prior to his injury aforesaid,* he was engaged in the business of buying and selling brooms at wholesale, and was a salesman of merchandise to the

290 Mo.—23

retail trade, and earned an average of five dollars per day; that since his injury, he has been unable to attend to his business, and has lost his earnings; that his earning power has been permanently impaired; that he will continue to lose the earnings of his business; that he will be permanently unable to follow his former business, or any other business.'' It is contended that this language of the petition limits both the past and future earnings of plaintiff to $5 per day. We do not so construe it. In our opinion, this language simply puts a limit on the plaintiff's loss of earnings prior to the filing of the petition, to an average of $5 per day; that there was no such limit put, or intended to be put, upon his future earnings. We agree to what was said by the St. Louis Court of Appeals in Jackson v. United Rys. Co., 227 S. W. 617, as to a very similar allegation:

''The allegation in the petition in regard to the question of such earnings is as follows:

'' 'She has lost the earnings of her labor and avocation to the date of the filing of this petition, to-wit, in the sum of $14 per week, which she was earning at the time of her injuries, and will lose such earnings in the future.'

''Does that allegation limit the amount of such future earnings to $14 per week? It is not reasonable to suppose that the pleader intended to limit the lost future earnings to $14 a week, as there was no means of knowing how much plaintiff would earn in the future. Nor does the language used in fact limit the alleged loss to that sum. It appeared by other allegations that the plaintiff was a skirt-maker, and the words 'such earnings in the future' referred to the earnings of her labor and avocation as a skirt-maker, but not at the rate of $14 a week, and it is nowhere said that such future earnings will amount to that sum or any other sum. 'Such earnings' mean earnings of a like character as had been earned; that is, earnings as a skirt-maker.

''Inasmuch as defendant did not in any wise attack the allegation by motion, and considering the fact that pleadings must be taken in their natural and ordinary

meaning and their allegation liberally construed (Sec. 1831; R. S. 1909), especially after verdict and judgment, we do not regard the allegation referred to as placing a limit of recovery on the item of lost future earnings.''

There being no limit fixed in the petition, as to the loss of future earnings, said instruction is not erroneous so far as it concerns future earnings, under all the authorities. Nor was it erroneous as to loss of earnings or loss of time (which is the same thing, Slaughter v. Railroad, 116 Mo. 269) from the time of the injury up to the filing of the petition, because the evidence was that the plaintiff earned only $4 a day or $100 per month, which was less than $5 per day, the amount fixed in the petition.

In Shinn v. United Rys. Co., 248 Mo. 173, where the special damages claimed in the petition were greater that the special damages proven by the evidence, and there was no limit fixed in the instruction, this court, per Lamm, J., said: ''We will not speculate on what the jury *might* do, or airily conjecture this or that. We stand on the proposition that the jury are presumed, absent anything to the contrary appearing, to obey their oaths and bring in a verdict according to the evidence. Being men of sense and acting under an oath freshly taken, they are entitled to that presumption.'' It is true that in that case it was not decided whether the fact that the evidence showed less special damages and earnings than specially alleged in the petition would render the generality of the instruction on the measure of damages free from objection or reversible error, but the court expressly reserved the decision on that point to some future case which might turn upon it. But we think the suggestion of the learned judge in that case, that ''we stand on the proposition that the jury will obey their oaths and find a verdict according to the evidence,'' is a sound proposition, and that, therefore, where the evidence of lost earnings is less than the amount limited in the petition, the jury will be presumed to follow the evidence and allow less than is limited in the petition for

such item of damages, although there is no express limitation in the instructions other than as in this case. The instruction in this case limits the amount of past and future earnings the plaintiff may recover to the reasonable value thereof which the jury may believe and find from the evidence plaintiff has and will lose. If the jury regard their oaths at all, they would be guided by said instruction, and obey the evidence. If the jury would disregard their oaths, they would also disregard the instruction, even if it contained a further express limit as to such special damages. It is only in case the amount of the special damages, as shown by the evidence, is or may be greater than the amount specified in the petition, that there is any necessity for inserting such limitations in the instruction. The cases relied on by appellant do not decide otherwise.

In the case of Smoot v. Kansas City, 194 Mo. 513, it does not appear that the earnings proved were less than the amount claimed in the petition. This is also true as to the case of Tinkle v. Railroad, 212 Mo. 445, where the amount of the doctor's bill proven does not appear. In the case of Radtke v. Basket & Box Co., 229 Mo. 1, the petition limited the loss of earnings to nine dollars per week. But the opinion does not state the amount of the earnings or earnings per week which the evidence tended to prove. In Finley v. United Rys. Co., 238 Mo. 6, the petition set a limit of three dollars per day as the amount of lost earnings, whereas the evidence showed such lost earnings to be three dollars to five dollars per day, a greater amount than sued for, and there should have been a limitation in the instruction to prevent the plaintiff from recovering a greater sum than sued for. It is well established law, that the generality of an instruction on the measure of damages in personal injury suits, does not constitute reversible error, unless the defendant asks instructions specifically pointing out the proper lines of limitation for the jury to follow in arriving at the amount of damages. [Hoover v. St. Louis Elec. T. Railroad Co., 227 S. W. l.

c. 79, citing Browning v. Railway, 124 Mo. 71; Powell v. Railroad, 255 Mo. 1. c. 456, and numerous other cases up to and including Sang v. St. Louis, 262 Mo. 463.]

The Kansas City Court of Appeals, following our suggestion in the Shinn Case, supra, has ruled in the following cases that, where the amount of the special damage proven is less than the amount specified in the petition, it is not reversible error for the court not to expressly limit in its instructions the amount of the special damages, for the reason that the jury will be presumed to follow their oaths and the instructions of the court to allow no greater sum for such damages than is shown by the evidence. [Campbell v. Chillicothe, 175 Mo. App. 436; Summers v. Railroad, 187 S. W. 125; Bell v. United Rys. Co., 183 Mo. App. 334; Morris v. K. C. Rys. Co., 223 S. W. 784; Erdmann v. United Rys. Co., 174 Mo. App. 245.] We regard this doctrine as sound law. We, therefore, hold that plaintiff's instruction on the measure of damages contains no reversible error. The defendant not having asked for any instructions limiting the amount of earnings, plaintiff was entitled to recover. We approve the ruling of the Kansas City Court of Appeals on this subject in the above cited cases, and disapprove the rulings of the St. Louis Court of Appeals, holding said instruction was erroneous or constituted reversible error in this case.

IV. Does instruction numbered 3 permit double recovery for a single loss, to-wit, loss of time and impaired earning capacity in the past? We think it does not.

Double Damages.

Loss of time and loss of earning capacity do not constitute separate and distinct items of loss. In Slaughter v. Railroad, 116 Mo. 1. c. 275-6, this court said: "The distinction sought to be made between 'loss of time' and 'loss of earnings' for that time does not exist in law. The damages to be awarded in either case is the pecuniary value of the time lost, and either expression sufficiently indicates the measure. In common acceptation they are one and the

same thing." So that permitting plaintiff to recover for time lost and reduced earning capacity in the past, does not allow him a double, but simply a single recovery for such loss of time, or which is the same thing, decreased earning capacity.

V. Was error committed in allowing evidence as to plaintiff's loss of profits or earnings? The evidence tended to prove that the plaintiff was incapacitated from pursuing, among other things, his ordinary

Evidence of Lost Earnings.

avocation; which, prior to his injury, had been that of a wholesale dealer in brooms in a small way; that he had purchased brooms from the manufacturers; that he had no storeroom, but kept such brooms at his dwelling house; that he went around and took orders for brooms and then delivered them or shipped them to the purchaser; that he was in business alone; that he kept no books; that he had been in such business several years prior to his injury, and that his net profits or earnings he estimated would average one hundred dollars per month, or about four dollars per day.

The appellant objected to the admissions of this testimony, for the reason that such earnings were too speculative; that respondent kept no books, and there was no means of ascertaining with reasonable certainty what the net profits or earnings of his business were. We do not regard the objections to this evidence well founded. In this case, plaintiff's loss was more in the nature of lost personal earnings than the loss of the profits of a regularly established mercantile business, because he alone conducted his business, and its profits depended wholly upon his ability to personally go around and solicit orders for and sell and deliver the brooms. The mere fact that plaintiff kept no books and could not tell precisely the net profits of his work or business should not deprive him of any just claim for loss of time or earnings. This is well illustrated in the case of Devoy v. Transit Co., 192 Mo. l. c. 223-4, where the plaintiff, an aged attorney, who "thought his earnings were in

the neighborhood of $2,500 a year, if he could figure it up.'' But he kept no books, had no regular clientele or office, but kept his books and office ''in his hat,'' and his business was that of assisting other attorneys to ''settle'' or ''shore-up'' their cases. He, however, was allowed for lost earnings such sum as the jury might believe from the evidence he sustained, ,''however ambiguous the evidence.'' This case was recently cited and approved by this court in Ganz v. Railroad, 220 S. W. 495. So, it is well settled that in actions by parents for damages for the loss of services or earnings of minors, evidence of the minor's age, previous health and condition in life is sufficient to enable the jury to determine the minor's earning capacity and the parent's loss, aided by the knowledge and experience of the jury. [Meeker v. Union Elec. Light & Power Co., 216 S. W. 933.]

So that we must rule this contention against the appellant.

VI.  Appellant further insists that the court erred in refusing to admit certain testimony of a witness, a passenger on the car, as to whether the jerk or jar complained of by the plaintiff was of sufficient force to throw a man down, while standing in the car. The following colloquy took place:

Conclusion of Witness.

''Q.  Please describe what you saw occur there at that time. A.  Well, a man got in the car with a bundle in his arm and the car gave a little kind of a curve going across the intersection there, and his bundles went against the window.

''Q.  Was there any violent jerking or lurching of of the car at that time? A.  Oh, no.

''Q.  Any motion more than they usually make? A. Only going over the crossing; when they go over a double crossing, that's all.

''Q.  Just the ordinary motion? A.  It wasn't enough to throw a man; that is, to overbalance a man.

"Mr. Hay: Well, I object to the conclusion of the witness.

"The Court: All right, the objection will be sustained.

"To which action and ruling of the court defendant, by its counsel then and there duly excepted and still excepts.

"Mr. Farley: Q. Well, compared with the way cars usually run at such a place, is that how this car ran? A. It ran very smooth to me.

"Mr. Farley: Take the witness."

We think the testimony was admissible as properly descriptive of the force of the jerk. [Rearden v. Railroad, 215 Mo. 134-38.] But the testimony was, in effect, admitted. The question was not objected to until after it was answered. It is true, objection was then made and sustained, but the answer was before the jury, and there was no motion to strike it out, and it was not stricken out. In any event, we should not regard the error as reversible, nor as affecting the merits of the case, because the witness had previously answered without any objection whatever that there was no unusual nor extraordinary jar or jerk, which completely covered the point at issue.

VII. In appellant's formal assignment of errors in its brief, one of the errors assigned is that the verdict was excessive; but under the heading in said brief, of points and authorities, nothing is said as to
Verdict. the amount of the verdict. In the further argument contained in the brief, however, the verdict is referred to as large and excessive. The verdict was for $5,000.

The plaintiff, as to his injuries, testified: That he was fifty-three years of age. That before the accident, his sight in both eyes was good—normal. That the glass was broken into almost innumerable fragments and thrown right into his face and both eyes. That he was almost "knocked blind" with glass which came into his

eyes. ''It produced terrific suffering. It seemed like my eyes were being almost cut out with the glass.'' That he immediately consulted and was treated by an oculist. But that his right eye, by reason of the accident, became turned to one side, so that he has but little sight in it. He cannot see ordinary print or even display-headlines with it. Could not read a single word with the right eye, and the sight in his left eye had also failed very much since the accident. That he was also disfigured, in that, whereas before the accident, both of his eyes were straight and in a normal position in his head, after the accident, and by reason thereof, his right eye had a ''divergent strabismus,'' that is, he became ''cock-eyed'' in the right eye. That ever since the accident, up to the time of the trial, both eyes had been in a state of severe pain, so much so that he never got any rest, ''practically.'' ''That is, insane pain at night, I hardly get any sleep at all; and they have been sore and in a very distressed condition continually; they have been inflamed and feverish.'' He further testified that after the accident he felt his right eye draw to one side and has since been unable to work. Photographs of plaintiff, one when he was a child, one when a young man, and one taken, as he testified, about six or eight years before his injury, showed that his eyes were straight.

A number of lay witnesses testified for plaintiff, that his sight was good, and that his eyes were straight, before the accident. Some witnesses testified for defendant to the contrary, that plaintiff's right, or one of his eyes, was defective before the accident. There was also some dispute between the expert testimony of the plaintiff and of the defendant. The plaintiff's expert oculist testified that his right eye might have been diverted from its natural position by the injuries he sustained. Whereas, the defendant's expert oculist testfied that he was the oculist to whom plaintiff first went for treatment after the accident; that he found no particles of glass or injury to the right eye, but that it was diverted when plaintiff first came to him, and the injuries he discovered

could not have caused the diversion of his right eye. But it was shown that some years previously this witness had been the regular physician for the defendant company, and at the time plaintiff came to him was occasionally consulted by an oculist by defendant; and that while he was treating the plaintiff, he communicated to the defendant plaintiff's condition, of which he did not inform the plaintiff, and of which the plaintiff was not aware.

In view of the conflicting evidence on the subject, we cannot say that the verdict was so excessive as to indicate that the jury were not governed by the weight of the evidence as they honestly believed it to be.

Finding no reversible error in the case, the judgment of the court below is affirmed. *Ragland, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur, except *Graves* and *Elder, JJ.,* who dissent.