[1] This is an action by the plaintiff to recover for personal injuries and damages to his automobile alleged to have been caused in a collision with one of defendant's streetcars. The verdict and judgment were for plaintiff in the sum of $5,500. The defendant's motion for new trial was sustained on the grounds of "misconduct of juror and error in instructions". From this order the plaintiff has appealed.
[2] In substance the petition alleges that on October 22, 1944, at about 6:00 p. m., plaintiff was driving his Chevrolet automobile in a northerly direction on Swope Parkway in Kansas City, Missouri, to the right of and alongside the northbound tracks of the defendant company, and that when plaintiff reached 59th Street, an east and west street intersecting said boulevard, he turned to the left, and while crossing the defendant's northbound track one of defendant's streetcars, likewise going in a northerly direction, was negligently and carelessly operated and controlled as to be caused and permitted to run into and violently collide with plaintiff's automobile, damaging the same, and causing the plaintiff to receive the personal injuries described. Of the various specifications of negligence alleged, only that purporting to constitute the humanitarian theory was submitted. As to that specification of negligence it was alleged that defendant negligently operated the streetcar so that it collided with plaintiff's automobile after the defendant's servant and employee, in control thereof, saw, or by the exercise of ordinary care could have seen, plaintiff's automobile in a position of imminent peril and danger of being struck by said streetcar, and that said servant and employee, in sufficient time thereafter, by the exercise of ordinary care and by the use of the means and appliances at hand, with safety to himself and passengers and to the streetcar, could have slackened the speed of the streetcar or sounded a warning of the approach and movements of the same, or stopped the streetcar and thus have avoided running into and colliding with plaintiff's automobile. The petition alleged the total loss of the automobile of the reasonable market value of $1000, and prayed for damages for personal injuries in the sum of $20,000, plus $1000 for said property loss.
[3] By its answer the defendant attributed the collision to the sole negligence of the plaintiff in that he failed to keep a vigilant and careful lookout; failed to give warning of his intention to make a left-hand turn; that he drove at an excessive rate of speed at the time in question; that he failed to have his automobile under control so as to bring it to a safe stop and avoid the collision with the streetcar, and that he failed to use the highest degree of care to extricate himself from a position of imminent peril when he could have seen defendant's streetcar in time to have stopped his automobile or slackened the speed thereof, and to have avoided the collision.
[4] According to the evidence Swope Parkway in Kansas City, Missouri, is a boulevard running, at all points in question, north and south and the thoroughfare for northbound traffic is divided from that provided for southbound traffic by a parkway on which is located the northbound and southbound tracks provided for the defendant's streetcars. Fifty-ninth Street runs east and west, and intersects Swope Parkway at right angles. The west line of the northbound roadway of the boulevard is 14 feet east of the center of the northbound streetcar track as it crosses 59th Street. As the boulevard approaches 59th Street from the south, there is a slight downgrade. Fifty-ninth Street is 30 feet wide from curb to curb. West of both streetcar tracks and on the north *Page 3 
side of 59th Street there was a slow sign for westbound traffic.
[5] The accident in question happened on Sunday, October 22, 1944, at about 6:00 p. m. The day was clear and dry. The streetcar in question was of the 1100 type, equipped with air brakes and they were in good condition. The operator had been operating streetcars "on his own" for about two weeks. He had loaded his streetcar at Swope Park and was not taking on any additional passengers after leaving the park, although several stops had been made to permit passengers to alight. Plaintiff, in his automobile, had headed north on the northbound roadway of Swope Parkway, intending to assist his passenger, a friend, to catch the streetcar. When the plaintiff observed that the streetcar was not permitting any additional passengers to come aboard at the various stops, he drove on northward on the boulevard toward 59th Street, intending to turn west at 59th Street and to Prospect Avenue, where his friend could catch a bus. Several people were waiting at the usual loading zone on the south side of 59th Street to board a northbound streetcar. A southbound streetcar had stopped on the south side of 59th Street and several passengers were alighting therefrom.
[6] According to plaintiff's evidence he looked back when he reached a point 40 feet south of the south curb of 59th Street and saw the defendant's streetcar approaching about 250 to 300 feet distant. Plaintiff was then traveling 25 miles an hour and slowed down to 10 miles an hour as he made the turn. He put out his left arm to indicate a left turn, and turned west on 59th Street, and when the front wheels of his automobile reached the east rail of defendant's northbound track, he again looked and the streetcar was about 100 feet south of the intersection. The plaintiff then turned his attention to the people leaving the southbound streetcar and slackened his speed somewhat. There was evidence that the distance of the streetcar from the plaintiff's automobile when he made the turn was 150 feet, and some witnesses testified that when plaintiff's automobile reached the track the streetcar was 100 to 150 feet distant. There was also evidence that the streetcar approached the intersection at 20 to 40 miles an hour, and neither slackened its speed before the collision nor sounded any warning. Some witnesses testified that the plaintiff's automobile, when hit by the streetcar was moving two or three miles an hour, and had not come to a complete stop. The plaintiff testified that after looking at the streetcar the last time, he saw a boy walking from the southbound streetcar loading zone into the intersection, and that plaintiff's attention was then directed solely toward the traffic ahead of him. Before the plaintiff's automobile had quite cleared the northbound track, the streetcar ran into the rear left part of the automobile with such force that it pushed the automobile northwardly beyond the north curbline of 59th Street and into a pole, where it came to a dead stop. The automobile was badly damaged, and the plaintiff was thrown with violence to the pavement, and was rendered unconscious.
[7] On the part of the defendant, its operator testified that he was slackening the speed of his streetcar as he approached the intersection, constantly sounding his bell as an indication that he was not going to make the stop to pick up waiting passengers at 59th Street, but intended to pass up that stopping point. There were other witnesses for the defendant who testified to the sounding of the bell. The operator said that about the middle of the block south of 59th Street, the plaintiff passed the streetcar and when the streetcar was about 25 or 30 feet south of the south line of 59th Street, the plaintiff "cut in" in front of the streetcar at 59th Street, without giving any signal. He testified that at a speed of 18 miles an hour, under the conditions there existing, he could have stopped the streetcar with safety within 35 to 40 feet; at 25 miles an hour, within 50 to 55 feet; at 25 miles an hour, within 65 to 67 feet; at 30 miles an hour, within 75 to 85 feet, all including reaction time. The operator applied the emergency brake promptly when the plaintiff turned westward, and cut down the speed of 22 miles an hour by 9 or 10 miles an hour. The streetcar ran about a *Page 4 
block after the collision. The operator testified that after the collision he released the brakes and purposely allowed the streetcar to run a short distance before coming to a complete stop, inasmuch as the wheels were sliding.
[8] There was voluminous testimony regarding plaintiff's personal injuries concerning which issue no point is made here on appeal.
[9] In regard to the automobile the plaintiff testified that it was a 2-door 1940 Chevrolet and had a value of $975, according to OPA ceiling; that it was in perfect condition and would have been appraised at the full OPA price, although that was not the price that he would have obtained for it if sold in violation of the law. On cross-examination he admitted that he paid $600 for it. There was evidence that the salvage was worth $50. In this connection, plaintiff called a witness who had sold the automobile to him and was familiar with its condition and value before and after the accident, and who testified that it was worth $900 or $1,000 on the day of the accident, and that after the accident it was worth only $50.
[10] When the plaintiff rested his case, defendant moved for a directed verdict and its motion was overruled. Upon the close of all the testimony of the case, the defendant again moved for a directed verdict, which was denied by the court. The case was then submitted by the plaintiff solely on the humanitarian theory.
[11] Among the various grounds of defendant's motion to set aside the verdict and judgment and to have judgment rendered in accordance with its motion for a directed verdict offered at the close of plaintiff's evidence, and at the close of all the evidence, or in the alternative, for a new trial, the defendant assigned general objections to the granting of the plaintiff's Instructions 1, 2, 3, and 4. It also assigned specific objections to plaintiff's Instruction 1, as not being authorized by the evidence or pleadings, and objected to Instruction 2, as not correctly submitting the measure of damages. One of the grounds for the motion for new trial was the alleged misconduct on the part of one of the jurors who was claimed therein to have obtained certain information at the public library during a recess pending the deliberations of the jury, regarding the periods of time required for the stopping of vehicles while running at certain rates of speed, which information, it is charged, the juror later conveyed to the other members, to the prejudice of the defendant. The affidavits of seven jurors and of one other person were attached to the motion, tending to verify the charge of misconduct of juror Richardson.
[12] Appellant's first contention is that it was prejudicial and reversible error of the trial court to sustain the defendant's motion for new trial on the ground of "misconduct of juror". The only misconduct of the juror discussed in the record is that which is charged in the motion for new trial, having to do with the action of one juror allegedly obtaining information outside of the jury room during a recess of deliberations, which information had to do with the periods of time within which vehicles could be stopped after attaining certain rates of speed. The court overruled the plaintiff's motion to strike all of the affidavits attached to the motion for new trial. The objection to the affidavit of the librarian was that it was incompetent, irrelevant, and immaterial, and without probative force because of its failure to identify any juror as guilty of the misconduct charged; that the affidavits of the jurors were privileged, constituted hearsay and in violation of the rule that a juror may not impeach the verdict of the jury of which he is a member, and that the said affidavits were immaterial and incompetent and without probative value.
[13] At the hearing of the motion for new trial Idris Smith was produced by the defendant and testified that she was in charge of the Business and Technical Department of the Kansas City Public Library; that she made the affidavit signed by her and attached to the motion for new trial. Upon objection to the introduction of the affidavit as not proving or disproving any issue in the case, the court sustained the *Page 5 
same. The witness proceeded to testify that during the week of May 24, some man came to the library to get a book which she identified as a volume entitled "Drive and Live" by Fitzgerald Hoffman Baston; that she gave the man that book, together with others. The objection to its introduction as incompetent, immaterial, prejudicial, and hearsay was overruled. A part of the book exhibited contained diagrams of stopping distances, including reaction time, at various speeds under favorable road conditions. When the witness was asked if she would know the gentleman who had asked for the book, she replied that she was not certain. Otho Richardson, who was foreman of the jury, was pointed out to her and she was asked if he was the man who had inquired for the book. Her answer was that she was not certain, but that she had seen him before, but was unwilling to swear that he was the gentleman who came for the book. She was certain, however, that the time was between May 24 and May 29 (during the week of the trial of this cause). On cross-examination she said: "Q. In other words, it was some man you gave several books to? A. Yes".
[14] Otho A. Richardson testified that he was foreman of the jury in this cause tried during the week of May 24, 1948, and, over the objection of the plaintiff on the grounds of the rule against a juror impeaching the verdict, the court permitted him to proceed with his testimony. He was asked if he recognized the librarian who had just testified. He said he was not certain. It was agreed that the plaintiff's objection might be considered as applying to all of the witness's testimony. The witness testified that after the jury had retired and during the lunch recess he went to the public library to ascertain information regarding "reaction time", and asked for books on the subject and received, among others, the volume above named. From that volume he made certain notations regarding the reaction time and stopping distances on the back page of a copy of The Reader's Digest. He had noted thereon that "Average person reaction time 3/4 second. Speed at 10 m. p. h. 11 ft., etc. Speed at 20 m. p. h. 22 fet". The title of the volume was also noted and certain computations on the sheet. There also appeared: "28 ft. to stop at 20 m. p. h." He said that he did not know that it was illegal to obtain the information for the purpose of the case. He admitted that he made some of the calculations on the memorandum as based on the evidence in the case. Over the objection of the plaintiff the memorandum was admitted in evidence. Witness testified that he brought this information back to the jury room and read it to the jurors. He admitted having signed the affidavit five days after the verdict. On cross-examination he admitted that he was foreman of the jury; that he was not against the plaintiff throughout the case, but refused to sign the verdict; that there was a dispute among the jurors as to reaction time and he wished to satisfy himself and the jury that there was "such a thing as reaction time". He said he believed from the evidence that the streetcar operator was innocent and he was trying to convince the jury of that fact; that he wished to convince the jury that under the testimony and because of the reaction time shown by the chart, the streetcar operator could do nothing. He said the schedules furnished pertained to an ordinary automobile and not to a street car, but that "the reaction time was so great the streetcar operator couldn't stop or do anything". The court overruled the motion to strike the testimony of this juror.
[15] Four other jurors were called to testify, of whom three had signed the verdict and one had not. Upon objection of the plaintiff, the testimony of these witnesses was denied, as was also the defendant's offer of proof of their testimony. Thus the trial court had refused to strike the affidavits attached to the motion for new trial, but at the hearing, denied the offer of the affidavit of the librarian. The court excluded testimony of the jurors other than that of the foreman Richardson.
[16] After the time, labor and effort expended in the solemn trial of a cause of action before a jury, the verdict should not be disturbed upon a charge of misconduct of one or more of the members of the jury except upon such conditions and upon such *Page 6 
proof as would prevent impeachment upon the mere whim or fancy of such juror or jurors, and would protect the stability of the verdict from the control of such juror or jurors. The reasons for this long established policy and rule are so well known that the courts no longer feel required to set them forth. The rule is well stated in Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47, 51: "The rule to which there is no exception in this state is that a juror will not be heard to impeach the verdict, whether the alleged misconduct occurred inside or outside the jury room." See, also, Evans v. Klusmeyer, 301 Mo. 352, 256 S.W. 1036; Reich v. Thompson, 246 Mo. 577,142 S.W.2d 486, 129 A.L.R. 795. It has been held, however, in the early case of Pratte v. Coffman, 33 Mo. 71, 78: "* * * when the court shall have reason to believe from evidence derived from other sources than the affidavit of the jurors, that there has been such misconduct on their part as to influence their verdict, we see no good reason why the affidavit of a juror might not be received for the purpose of explaining or enlarging such evidence". In the instant case the only outside source from which the trial court could derive any evidence as to the purported misconduct of the juror Richardson was the testimony of the librarian from the public library. The most that can be said regarding her testimony was that during the week in question she supplied to some man, at the library, whom she could not identify, several books for reference, among which was the book described in the defendant's motion for new trial, and that after seeing the juror Richardson in the court room, she was not certain that he was the man. Without further basis for the testimony of the jurors, the court admitted the testimony of the juror Richardson, whose testimony purported to show that the remaining jurors were either misled or confused or otherwise influenced by information supplied by Richardson, obtained outside by his independent investigation. We believe that the testimony of the librarian falls far short of being sufficient evidence from an outside source from which the court could reasonably believe that there had been misconduct on the part of the jury, or such proof as to justify an impeachment of the verdict by a juror. For the court, therefore, to allow a new trial on that ground, would have been an abuse of its discretion and cannot be upheld.
[17] In the absence of a more particular specification of "Error in Instructions" stated by the court as one of the reasons for the granting of a new trial, the appellant assumes in his main brief that the only instruction referred to was plaintiff's Instruction 2, which, it is stated, was the only instruction about which there was oral argument on the motion for new trial. That instruction was to the effect that if the jury found for the plaintiff on the evidence and under the instructions, the jury should assess the plaintiff's damages at such sum as they believed and found from the evidence would fairly and reasonably compensate the plaintiff for his personal injuries, if any, and damages to his automobile, if any, sustained at the time and place mentioned in evidence. It was urged by the defendant that that instruction did not submit to the jury the measure of property damage, to wit, the difference between the reasonable market value of the automobile immediately before the accident and immediately thereafter. There was substantial evidence as to the value of the automobile before and after the accident, that issue having been testified to by both the plaintiff and the witness from whom he purchased the automobile and who was familiar with it at the times in question. Photographs and other evidence had been submitted pertaining to the condition of the automobile after the collision. By the instruction the jury was confined to the damages to his automobile, if any, as shown by the evidence and to assess his damages therefor at such sum as, under the evidence, would fairly and reasonably compensate him for the same. The defendant offered no instruction on the subject. We believe the instruction, as given, did not constitute a nondirection, nor was it a misdirection. It was proper so far as it went. It would have been proper, of course, for the instruction to have proceeded to set forth the exact measure of personal property *Page 7 
damage. It was the duty of the defendant, if it desired a more definite measure of damage to have requested an instruction to that effect. In Wheeler v. Missouri-Kansas-Texas R. Co., Mo.App., 205 S.W.2d 906, 908 an instruction which submitted as a measure of damages "* * * loss of wages already sustained and `all loss of wages that you may believe plaintiff will sustain in the future'", it was urged that as to future earnings only the present cash value thereof could be recovered, we said, 205 S.W.2d loc. cit. 908: "However, the instruction was good as far as it went and it is well settled that, under such circumstances, if defendant desires the jury to be more fully instructed upon the subject it is its duty to offer such an instruction. Louisville N. R. Co. v. Holloway, 246 U.S. 525, 38 S.Ct. 379, 62 L.Ed. 867; Clark v. Chicago, R. I. P. Ry. Co., 318 Mo. 453, 300 S.W. 758." See, also, Brunner v. Stix, Baer 
Fuller Co., 352 Mo. 1225, 181 S.W.2d 643.
[18] In Hancock v. Kansas City Terminal Ry. Co., 339 Mo. 1237,100 S.W.2d 570, 574, the Supreme Court said, quoting from a prior opinion [Laycock v. United Railways Co., 290 Mo. 344,235 S.W. 91]: "`It is well-established law that the generality of an instruction on the measure of damages in personal injury suits does not constitute reversible error unless the defendant asks instructions specifically pointing out the proper lines of limitation for the jury to follow in arriving at the amount of damages.'"
[19] In respondent's brief it complains also of plaintiff's Instruction 1 on the ground that it was not supported by submissible evidence, and directed a verdict upon speculation and conjecture. The defendant, for grounds of its said contention, argues that plaintiff was not in imminent peril before he turned west on 59th Street; was not entitled to recover in view of defendant's evidence that the streetcar was only 25 to 40 feet distant when plaintiff turned west on 59th Street, and that the instruction was erroneous under plaintiff's personal testimony.
[20] Respondent claims that there was no evidence to support the theory that the collision was caused by negligent failure of the operator to slacken the speed of the streetcar and to sound a warning after plaintiff got in a position of imminent peril. In this connection we must consider the evidence most favorable to plaintiff. There was testimony to the effect that the automobile was in plain view of the streetcar as the former proceeded north and alongside of the streetcar and that when within 40 feet of the south boundary of 59th Street, plaintiff crowded to the west curb of the roadway and extended his left arm to indicate a left turn; that in doing so the plaintiff slackened his speed; that there were several people waiting south of 59th Street to board the streetcar; that a southbound streetcar had stopped on the west side of the intersection, and a warning from the northbound streetcar as the plaintiff was approaching 59th Street might have been given in time to permit the plaintiff to stop his automobile; that as the front wheels of the automobile reached the east rail of the northbound track, the streetcar was 100 to 150 feet south of 59th Street and running at a speed of 20 miles an hour; that the operator had his hand on the brake lever and could have stopped with safety within 50 to 55 feet; that the operator did not apply the brakes at that time nor sound a warning; that the automobile was running from two to five miles an hour when it was struck on the rear left corner of its body; that after the operator saw the plaintiff starting to make the turn and put on his emergency brake the streetcar, without sounding any warning, moved more than 150 feet to the point of the collision, at 20 miles an hour, running three times the distance within which it could have been stopped with safety, or its speed slackened so as to permit plaintiff to avoid the collision. This evidence created a question for the jury as to whether or not the plaintiff was in imminent peril before he turned west on 59th Street and whether or not the streetcar could have been stopped with safety within that distance to avoid the collision. Likewise, giving to the plaintiff's own testimony the most favorable inferences therefrom, we fail to find, as a *Page 8 
matter of law, that the evidence of the time and place when the plaintiff reached the position of imminent peril was so speculative and conjectural as to deprive him of the right to submit that issue to the jury in his Instruction 1. We find no error in Instruction 1.
[21] The respondent makes the further contention that the granting of a new trial should be affirmed because the court erred in overruling the defendant's motion for a directed verdict at the close of all the evidence. Since the matters therein involved are the same as those in respondent's objections to plaintiff's Instruction 1, our ruling on Instruction 1 necessarily governs this last point made. We find no merit in this last contention.
[22] The ruling of the trial court granting a new trial in the above cause is hereby reversed and the cause is remanded with directions to reinstate the judgment for the plaintiff in accordance with the verdict as of the date thereof.
[23] CAVE, J. concurs; VANDEVENTER, J. (sitting by order of Supreme Court), concurs.