JOSEPH I. CLARK v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.—300 S. W. 758.

Division One, December 7, 1927.

454

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

456

*J. E. Addington* and *Hogsett & Boyle* for respondent.

GRAVES, P. J.—Action for personal injuries bottomed upon the alleged violation of the Federal Safety Appliance Act. The issues,

however, for our determination have been much simplified by admission made by learned counsel for appellant. Plaintiff was the head brakeman on his train, and his position (when the train was moving) was upon the engine. He was required to inspect, at each stop, the running gear (under the cars), for hot boxes, trouble in the brake rigging and such things about the under-equipment of the car. The rear brakeman had a like duty, and it appears that they would leave their respective places (when the train stopped) and inspect one side, and when they met in or about the middle of the train, they crossed over, and the head brakeman returned toward the engine (inspecting as he went along) and the rear brakeman returned to the other end of the train doing the same. Counsel for appellant, in their statement, say:

"The plaintiff was injured on the evening of September 11, 1922, at the town of Colby, Kansas. He was in the employ of defendant and was working as head brakeman on defendant's extra freight train westbound. Plaintiff's run was from Phillipsburg, Kansas, to Goodland, Kansas. The train, however, was carrying interstate shipments. It had stopped at the station of Colby for water, and plaintiff, according to the regular custom, had been back along the train making a run inspection and had gotten back to a point at or near the water tank when the engine finished taking water and the train was ready to go.

"Pursuant to a signal initiated by the conductor and passed on to the engine men by plaintiff, the engine started up. Plaintiff, whose position on the train was on the engine, swung on the ladder on his side of the first car back of the tender, intending, as he said, to climb to the top of the car and then make his way over the top to the tender and thence to the engine. When he had climbed to the top of the ladder he reached above the ladder to a handhold on top of the car at the edge immediately above the ladder, and when he put his weight upon the handhold the running board of the car to which it was attached swung out, and he fell to the ground.

"The petition charged that the handhold was insecure and defective in violation of the Safety Appliance Act, that plaintiff was caused to fall and was injured thereby, and that plaintiff and defendant at the time were employed and engaged in interstate commerce. Defendant's answer was a general denial, coupled with a plea of assumption of risk, and also the allegation that plaintiff's injuries were caused by his own negligence. Plaintiff replied, denying the allegations of the answer.

"It stands admitted that the car in question was moving in interstate commerce. It was established without dispute that the handhold was insecure."

Later in the printed argument counsel say:

"We, of course, concede that it is negligence *per se* for a railroad to operate a car that has a defective handhold. We also concede that it was established that the handhold was defective. We further concede that the evidence was sufficient to take to the jury the question whether the defective condition was the proximate cause of the injury. We insist, however, that it was necessary in an instruction authorizing a verdict to require the jury to find that the maintenance of the defective handhold was the proximate cause."

These concessions cut out the things that are usually hotly contested in cases of this character. Upon trial before a jury plaintiff had a verdict (signed by nine jurors) for $25,000. The trial court upon the hearing of the motion for new trial required a *remittitur* of $10,000, and such *remittitur* being entered the motion for new trial was overruled, and judgment entered for $15,000. From this judgment comes this appeal.

The assignment of errors shows just what questions the appellant's counsel consider to be in the case, after concessions and admissions aforesaid. These assignments are· short and pointed, and we quote them in full, as follows:

"(1)   The court erred in giving plaintiff's Instruction 1.

"(2)   The court erred in giving of its own. motion Instruction 2, which was a modification of plaintiff's requested Instruction 2.

"(3)   The court erred in giving of its own motion Instruction 3, which was a modification of plaintiff's requested Instruction 3.

"(4)   The verdict was excessive.

"(5)   The verdict was so excessive as to show passion and prejudice on the part of the jury.

"(6)   The damages after the *remittitur* required by the court are excessive.

"(7)   The court erred in refusing to grant a new trial because the verdict was excessive.

"(8)   The court erred in refusing to grant a new trial."

Going to "Points and Authorities" we find the following which is not mentioned in the assignments we have quoted, supra:

"(b)   Instruction 5 was erroneous in authorizing the jury to award plaintiff damages for loss of future earnings without limiting such award to the then 'present cash value' thereof."

Instruction 5 is not mentioned in the formal assignments of error. But even considering that Instruction 5 is properly assigned as error, the only issues for consideration are as to instructions numbered 1, 2, 3, and 5 given for plaintiff, and the excessiveness of the verdict and of the judgment after *remittitur*. The court refused plaintiff's instructions numbered 2 and 3 as asked, and modified them and gave them. This fully appears in assignments 2 and 3, supra. No contention that plaintiff did not make a case for the jury. This outlines

the case, and pertinent evidence bearing upon the contention will be noted in the course of the opinion.

I.   Instruction 1 for the plaintiff is the subject of the first complaint made by appellant. This complaint can best be gathered from what appellant says about the instruction, because there are admissions as to the instruction, and its meaning and effect, which will shorten our inquiry. First, learned counsel for defendant say:

"1.  The court erred in the giving of instructions:

"(a)  Instruction 1 was erroneous in that it failed to require .the jury to find that the defective handhold and its maintenance in a defective condition was the proximate cause of plaintiff's injury. Instructions 2 and 3 were erroneous, in that they excluded from the consideration of the jury knowledge of plaintiff of the defective condition and negligence and recklessness on his part in using the handhold with such knowledge. The evidence was sufficient to warrant the jury in finding negligence and recklessness of plaintiff in using the handhold in question was the sole proximate cause of his injury. [Rittenhouse v. Railway, 299 Mo. l. c. 211; Lang v. Railway, 255 U. S. 455; Railroad v. McWhirter, 229 U. S. 265; Flack v. Railway, 285 Mo. l. c. 49; Railroad v. Conarty, 238 U. S. 243; Phillips v. Railroad, 283 Fed. 382; Great Northern Railway v. Wiles, 240 U. S. 444; Davis v. Kennedy, 266 U. S. 147; Freese v. Railroad, 290 Mo. 501, affirmed 263 U. S. 1; McCalmont v. Railroad, 283 Fed. l. c. 741; Poliakoff v. Express Co., 105 S. E. (S. C.) 749; Caldine v. Railway, 117 N. Y. Supp. 705; Rowe v. Railway, 286 S. W. 784; Railway v. Smithers, 259 S. W. 286.]

"(b)  Instruction 5 was erroneous in authorizing the jury to award plaintiff damages for loss of future earnings without limiting such award to the then 'present cash value' thereof."

In the course of the printed argument counsel attempt to make clear just what they contend is wrong with Instruction 1. They say:

"The point we make about Instruction 1 is that it authorized a verdict for plaintiff without requiring the jury to find that the defective handhold was the proximate cause of plaintiff's injury. The point we make about both Instructions 2 and 3 is that they authorized the jury to disregard plaintiff's knowledge of the insufficience of the handhold and negligence and, particularly, to disregard them in determining the question of whether plaintiff's injury was caused by a defective handhold or his own act and negligence.

"The questions presented as to Instruction 1 and Instructions 2 and 3 are similar and may well be treated together. Instruction 1 sufficiently required the jury to find that the handhold was defective. It also required the jury to find that plaintiff caught hold of it and that by reason of its insecure condition it swung out and by

swinging out caused plaintiff to fall to the ground; that as a direct result of the fall he was injured. We insist that by these conditions the jury were not required to find that the defective condition caused the injury. To illustrate: The jury could very well find, and we believe could hardly fail to find, that the swinging out of the hand-hold when deceased had hold of it caused him to fall to the ground and that his fall resulted in injury to him. *There is still lacking, however, the requirement that the defective condition itself was the cause of his climbing on the car and taking hold of the handhold and resulting fall and injury.*"

We have italicized the last four lines of this argument, supra. In the four lines counsel themselves had italicized the words "was the cause of his climbing on the car." Counsel have thus boiled their complaint down to to one point, i. e. that Instruction 1 failed to require the jury to find that the defective condition of the handhold *"was the cause of his* (plaintiff's) *climbing on the car"* and using such handhold. It looks rather refined, but such is the point to which the complaint is reduced by counsel themselves. This we discuss later. We shall not discuss the contention "that a railroad is not liable to an employee for violation of the Safety Appliance Act, unless such violation was the proximate cause of the injury to the employee." This rule must be conceded. This sends us to the instruction to see what is in fact submitted and required to be found by the jury. The instruction is not long and all might be given, but the counsel for plaintiff have, by elimination of words, shortened and clarified the part of the instruction of value upon the contention now being considered. These counsel say:

"That instruction is found at page 434 of the record. After certain preliminary findings, it requires the jury to find that plaintiff while acting in the line of his duty as said brakeman and while engaged in the scope of his employment . . . boarded the first car behind the engine . . . intending to climb to the top of the car and go over said car to the engine; . . . that the handhold on the roof at the top of said ladder was not secure; . . . that as plaintiff was climbing the ladder on said car and in order to draw himself up to the top of said car he caught hold of said handhold, . . . and that said handhold by reason of its insecure condition . . . swung . . . and the plaintiff was thereby caused to fall to the ground . . . and as a direct result thereof plaintiff was injured. . . ."

We have carefully read the instruction and compared it with what counsel say is the meat of it in the quotation, supra. By their process of eliding words the things required to be found by the jury are made more apparent. In other words, they have simplified the instruction by the process of eliding words. Now, if this instruction does not re-

quire the jury to find that the defective handhold was the direct cause of the injury to plaintiff, we do not understand the English language. It does not require the jury to find that the defective handhold caused plaintiff to climb the particular car that he did climb in getting back upon his then moving train and the engine upon which he rode, but this finding, we shall attempt to show, was not required, notwithstanding the contention of appellant's learned counsel stated, supra.

But to return to Instruction 1, and what it required the jury to find. It required the jury to find (1) that plaintiff while in the scope of his employment as brakeman boarded the first car back of the engine intending to climb to the top thereof and go over said car to his engine, the place where he rode; (2) that the handhold on the roof of the car and at the top of the ladder upon which plaintiff was climbing from the ground up *was not secure;* (3) that plaintiff in order to draw himself up to the top of the car caught hold of said handhold; (4) that said handhold by reason of its insecure condition swung out and plaintiff was thereby caused to fall to the ground, and (5) "and as a direct result thereof plaintiff was injured." The finding of these things by the jury is a finding that the admitted defective condition of the handhold was the proximate cause of the injury to plaintiff. The words "proximate cause" are not used, but their equivalents are used. The jury had to find that the defective handhold caused the fall, through and by which the plaintiff was injured. But for the defective handhold there would have been no fall, and without the fall no injury. This Instruction 1 is not subject to the criticism made by appellant's counsel. [Wolfe v. Payne, 241 S. W. l. c. 917-918.] This case approves of an instruction on grab-irons or handholds, if you can find the right point, in an instruction covering about one and one-half pages of the Southwestern Reporter. This opinion of our Court en Banc (with one lone dissent on the sole ground that the length of the instruction condemned it) was later approved by the United States Supreme Court. [Davis v. Wolfe, 263 U. S. l. c. 244.]

We can well go a step further. The instruction clearly requires the jury to find a definite series of facts. These facts, if found, constitute proximate cause as a matter of law. A court can tell a jury that if they find a given state of facts to exist then they will find for plaintiff. This upon the theory that such facts (if found) constitute negligence and show proximate cause, as a matter of law. We have so recently ruled the question, that we simply cite the case and leave the matter: Oglesby v. St. Louis-San Francisco Railway Company, 318 Mo. 79, decided October 10, 1927. See Paragraph II of the opinion in that case.

Now to the refined contention of appellant to the effect that the jury was not required to find that the defective condition of the hand-hold *"was the cause of his* (plaintiff's) *climbing the car."* We confess that this is a little fine for our reasoning faculties. The instruction did require the jury to find that the plaintiff was in the line of his duty. and within the scope of his employment when he undertook to board this car. We have outlined the evidence and concessions. Plaintiff was required to make inspections of the cars in the train, as we have stated, at the time of train stops. He had to return to his place upon the train, which was upon the engine. He was within his right in boarding any car in the train for that purpose. Not only so but he had a right to expect the handholds to be in condition for his use. There is nothing to this very refined point. There was no occasion, within the law, to require such a finding from the jury. We conclude there was no error in plaintiff's Instruction 1.

II. The second contention of appellant is that instructions numbered 2 and 3 are erroneous. Counsel for appellant thus state their contention as to these two instructions:

"There being, therefore, evidence upon which the jury could find that negligence on the part of the plaintiff was the sole cause of his injury, it was error to authorize a verdict without requiring them to find that it was proximately caused by maintenance by defendant of the defective handhold.

"This error in Instruction 1 was repeated in instructions numbered 2 and 3, which were modifications of the instructions asked for by plaintiff. By Instruction 2 the court advised the jury that if it found the facts as submitted in Instruction 1 (which did not require the jury to find proximate cause) 'then even though you should believe and find from the evidence that plaintiff had knowledge before climbing said ladder of the condition of said roof and handhold, this fact will not constitute a bar to this action.' By Instruction 3 the court advised the jury that 'even though you should believe and find from the evidence that plaintiff himself was guilty of some negligence contributing to cause his injury, such contributory negligence on the part of the plaintiff will not constitute a bar to this action.'

"These instructions constituted a positive misdirection in respect to the matter which Instruction 1 erroneously failed to submit, to-wit, the question of whether the proximate cause of plaintiff's injury was in maintenance by defendant of the defective handhold or whether the sole proximate cause was plaintiff's own act in using it with the knowledge of its condition. Sufficient has been said to demonstrate the error in Instructions 1, 2 and 3."

These two instructions are as follows:

"2. You are instructed that if you find the facts as submitted to you in Instruction No. 1, then even though you should believe and find from the evidence that the plaintiff had knowledge before climbing said ladder of the condition of said roof and handhold, this fact will not constitute a bar to this action.

"3. You are instructed that if you find the facts to be as submitted to you in Instruction No. 1, then even though you should believe and find from the evidence that plaintiff himself was guilty of some negligence contributing to cause his injury, such contributory negligence on the part of the plaintiff will not constitute a bar to this action."

Appellant's contention is practically disposed of in our Paragraph 1, supra, wherein we rule that Instruction 1 did require the jury to find that the defective handhold was the proximate cause of the plaintiff's injury. Counsel say "this error in Instruction 1 was repeated in Instructions 2 and 3." If there was no error in Instruction 1, as we have ruled, supra, then a repetition of the matter in Instructions 2 and 3 was not error.

Again in the latter portion of the quotation from their argument, supra, it is urged that these Instructions 2 and 3, "constituted a positive misdirection in respect to matter which Instruction 1 erroneously failed to submit, to-wit, the question whether the proximate cause of plaintiff's injury was in the maintenance by defendant of the defective handhold, or whether the sole proximate cause was plaintiff's *own act* in using it with knowledge of its condition."

A full answer to this is found in Paragraph I of this opinion, supra, in which we rule that Instruction 1 for plaintiff did submit to the jury the question as to whether or not the defective handhold was the proximate cause of the injury to plaintiff. But an examination of these two instructions shows just what the trial court had in mind when he gave them. The cause of action was one under the Federal Safety Appliance Act. This is conceded in this court, as we have shown, supra. Instruction 2 in effect tells the jury that under the Safety Appliance Act, assumption of risk is not a bar to the plaintiff's action. Instruction 3 likewise told the jury that plaintiff's contributory negligence, under the Safety Appliance Act, was not a bar to plaintiff's action, i. e. that it would not totally defeat and destroy such action. Under the construction given to the Federal Safety Appliance Act by the Federal courts these instructions are proper.

Assumption of risk is no defense. See Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. l. c. 43, whereat the United States Supreme Court said:

"Of course, the employee's knowledge of the defect does not bar his suit, for by Section 8 of the Act of 1893 an employee injured by any car in use contrary to the provisions of the act is not to be deemed

to have assumed the risk, although continuing in the employment of the carrier after the unlawful use of the car has been brought to his knowledge; and by Section 5 of the Act of 1910 the provisions of the 1893 Act are made applicable to it, with a qualification that does not effect remedial actions by employees.''

Nor is contributory negligence a defense at all (either in part or *in toto*) where the damage is the result of a defective appliance and the cause of action is under the appliance act, supra. See Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 1. c. 49, whereat the United States Supreme Court thus speaks:

''But having regard to the state of the proof as to the defect in the coupling mechanism, its failure to automatically work by impact after several efforts to bring about that result, all of which preceded the act of the switchman in going between the cars, in the view most favorable to the railroad, the case was one of concurring negligence, that is, was one where the injury complained of was caused both by the failure of the railway company to comply with the Safety Appliance Act and by the contributing negligence of the switchman in going between the cars. Under this condition of things it is manifest that the charge of the court was greatly more favorable to the defendant company than was authorized by the statute for the following reasons: Although by the third section of the Employers' Liability Act a recovery is not prevented in a case of contributory negligence since the statute substitutes for it a system of comparative negligence whereby the damages are to be diminished in the proportion which his negligence bears to the combined negligence of himself and the carrier, in other words, the carrier is to be exonerated from a proportional part of the damages corresponding to the amount of negligence attributable to the employee (Norfolk & Western Railway Co. v. Earnest, 229 U. S. 122), *nevertheless under the terms of a proviso to the section contributory negligence on the part of the employee does not operate even to diminish the recovery where the injury has been occasioned in part by the failure of the carrier to comply with the exactions of an act of Congress enacted to promote the safety of employees. In that contingency the statute abolishes the defense of contributory negligence not only as a bar to recovery but for all purposes.*

''The proviso reads, Act of April 22, 1908, c. 149, sec. 3, 35 Stat. 65, 66: 'Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.' ''

From what we have quoted from the argument of learned counsel, supra, it is clear that they are undertaking to make out of assump-

tion of risk and contributory negligence, the proximate cause in this case. That has been fully answered by the Federal court in Grand Trunk Western Ry. Co. v. Lindsay, 201 Fed. 1. c. 844, whereat the court says:

"In holding that there was no evidence on which to base defendant's requested instruction that if plaintiff gave a 'come ahead' signal to the engineer, and then went between the cars and in consequence thereof was injured, then the giving of the 'come ahead' signal was the proximate cause and plaintiff could not recover.

"On re-examination we agree with the view expressed by Judge SEAMAN in his concurring opinion that there was conflicting evidence respecting the giving of the 'come ahead' signal, but that, even so, the requested instruction was properly refused. If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted 'in whole or in part' from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act."

This disposes of the contentions as to the instruction, except Instruction 5. They are wholly without merit. Of Instruction 5 later.

III. The complaint lodged against Instruction 5 seems to have been an afterthought. No complaint was made of this instruction in the formal assignment of errors, quoted in full, supra. Under the division of the brief, "Points and Authorities," it is alleged that this instruction is erroneous, and the reason assigned. Had there  been no formal assignment of errors at all this would have been a good assignment. We rule the assignment properly made and saved and will consider the point. The point is that the instruction authorizes the recovery for future earnings without limiting the recovery to the "present cash value" of such future earnings. This instruction is in general terms, but not nearly so general as some that have been approved. The instruction reads:

"If you find the issues in favor of the plaintiff, then in assessing plaintiff's damages you should award him such sum as you believe and find from the evidence to be fair, reasonable and just compensation to him for the injuries, if any, which you believe and find from the evidence he sustained as a direct result of said fall; and in de-

termining said amount you should take into consideration the pain and suffering, if any, which you believe and find from the evidence plaintiff has sustained as a direct result of said injuries, and the pain and suffering, if any, which you believe and find from the evidence he is reasonably certain to sustain in the future as a direct result of said injuries; and you may further consider any loss in earnings which you may believe and find from the evidence plaintiff has sustained as a direct result of said injuries and any further loss of earnings which you may believe and find from the evidence plaintiff is reasonably certain to sustain in the future as a direct result of said injuries, your verdict in all, however, not to exceed the sum of $35,000, the amount sued for in plaintiff's petition. By naming this amount, the court does not mean to imply that you should find a verdict in this sum, or in any sum, but merely names the amount sued for.''

For comparison an instruction is quoted from a late Federal case (L. & N. Railroad Co. v. Holloway, 246 U. S. 525) which instruction reads: ''The measure of recovery, if you find for the plaintiff, being such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed, not exceeding the amount claimed, to-wit, $50,000.''

The record shows no request by defendant for an instruction covering this limitation of a recovery to the cash value of future earnings. Defendant so far as the record shows asked for but two instructions, and they were given. Both referred to the amount of damages, but not specifically as to future earnings. The first told the jury that they were not permitted to enter into the realm of speculation in determining the issues, and that ''this rule'' (as to the realm of speculation) applied to determining the amount of damages, and in assessing the damages, if any, ''you must not permit to enter therein any element of speculation or conjecture.'' The other instruction told the jury that the burden was upon the plaintiff to prove the character and extent of his injuries by a preponderance of the evidence, ''and you are not at liberty and must not allow damages for injuries, if any, not so proven.''

Thus it appears that defendant had in mind very fully the idea of limiting the amount of the recovery. Yet no instruction was asked along the line of the complaint now lodged against Instruction 5. The contention cannot be sustained for two reasons. In the first place instructions in much more general terms and without mention of ''the present cash value'' have been sustained. [L. & N. Railroad Co. v. Holloway, 246 U. S. 525, supra.] Read the instruction in that case (which we quote, supra) and the court's comments thereon, the

closing portion of which says: "The company had, of course, the right to require that this general instruction be supplemented by another calling attention to the fact that, in estimating what amount would compensate the widow, *future benefits* must be considered at their present value. *But it did not ask any such instruction.*" Such is the exact situation here.

Defendant should have asked an instruction along the line of its complaint made in this court as to the alleged defect in Instruction 5. Having failed to do so it is in no position to complain. [L. & N. Railroad Co. v. Holloway, supra; Rigley v. Pryor, 290 Mo. 1. c. 26.] In Rigley's case we said: "If the instruction is somewhat vague in directing how to make the estimate, the appellant cannot complain because it offered no instruction on the subject." Such is the general rule in Missouri. [Denkman v. Prudential Fixture Co., 289 S. W. 1. c. 596; Stephens v. Saunders, 239 S. W. 600; Powell v. Railroad Co., 255 Mo. 1. c. 456; Hurlburt v. Bush, 224 S. W. 1. c. 326-7; Breen v. Railways Co., 204 S. W. 523; Rigley v. Pryor, 233 S. W. 828; Page v. Payne, 240 S. W. 1. c. 162.]"

From it all we must rule that the belated contention as to error in Instruction 5 cannot be sustained.

IV. We now reach the last contention, which relates to excessiveness of the judgment as it now stands. A diligent claim department has followed plaintiff from the time he filed suit, practically to the hearing in this court. After defendant's motions for new trial and in arrest were overruled, a lot of affidavits were filed with a motion to set aside the orders overruling the motion for a new trial and the motion in arrest of the judgment.

At date of injury (September 11, 1922), the plaintiff was twenty-four years of age. There is evidence from which a jury could find (1) that he was earning right at $200 per month on an average; (2) that he was in perfect health prior to injury; (3) that he continuously worked from the time he left school to the date of his injury, except the time he served in the Navy during the world war; (4) that his work for defendant from February, 1920, to date of injury was constant, except a few months in 1922 when, on account of the reduction of the railroad forces, he only worked partial time on extra crews; that he was on the regular force up to January 6, 1922, when he was put off, and was not put back until June, 1922; and (6) that he was unable to do any work from the injury in September, 1922, to the date of the trial in May, 1924. Plaintiff's counsel thus summarize his injuries and sufferings:

"He then had, as disclosed by three different sets of X-ray pictures taken for the plaintiff and by the testimony of three physicians on his behalf, all of the highest standing, the following injuries;

"A tilting of the sacrum; a rotation of the bodies of the lumbar vertebrae, the first four being rotated to the right and the fifth to the left; a widening of the right sacroiliac joint; a lateral curvature of the lumbar spine; a flabbiness in the muscles of the right thigh and leg; the patellar reflex in the right knee was almost absent and that in the left knee abnormal; a stiffening of the spinal column in two places, one beginning about the fourth lumbar vertebra and extending up to about the eleventh dorsal, and the other extending from the fourth dorsal down to the seventh or eighth dorsal vertebra, caused by the exudate between the vertebrae, found not only by plaintiff's doctors, but also by Dr. Jenkinson, defendant's X-ray man, on Exhibit 7, an X-ray plate taken during the trial by defendant. These injuries are permanent. He had been in the hospital on three different occasions and had had three different casts put on his body by defendant's doctors, one of which he was still wearing. He was suffering from pain, weakness and numbness in his right leg; pains and muscle spasms in his back; pain in the lower part of his spine and right hip; constant headaches, inability to sleep; inability to walk any distance without tiring; sudden movements of his back or any jolting or jar brought on the muscle spasms; he was unable to lift anything; he had lost from twelve to fifteen pounds in weight. He was permanently incapacitated from following his avocation as a railroad man or any work requiring any activity, lifting or hard manual labor."

There is evidence in this record from which each and all of the foregoing could be found by a jury. The medical testimony for the plaintiff impresses the reader. The absence of partisanship (so frequently apparent in the medical testimony in cases of this character) is impressive. It bears the impress of sincerity and truth, and does not seem to be overdrawn. The character of the treatment given to plaintiff by the doctors testifying for defendant, and in the employ of defendant, did not accord with their evidence on the witness stand. But this is digressing. Going back to the evidence of plaintiff, learned counsel for appellant, among other things, says: "First, directing attention to the medical testimony, *it may be conceded* that plaintiff's doctors all gave opinions that he was suffering from an injury to the sacroiliac joint; *that it was permanent and that it disabled him from manual labor and practically all physical activity.*"

It is true that after making this admission counsel undertakes to minimize the evidence by other facts (so called) in the case. Some of these facts are too foul for an opinion of this court, and seem to have been gathered, instigated and produced by the railroad's detective, who ingratiated himself into the good graces of plaintiff on the theory of being a trainman out of a job (as was plaintiff) and as such followed plaintiff from place to place in his travels. Plain-

tiff was looking for work on a trip when many things happened. The cross-examination of plaintiff shows that the daily as well as the nightly doings of the plaintiff, for some months of time, found their way into the office of defendant's counsel, and from this the source of the *information* will be inferred, as well as the fact that the informer was on the pay-roll of appellant. Appellant urges that the original verdict was so high as to indicate passion and prejudice upon the part of the jury and that the judgment is yet far too much. Of course this court long since abandoned the doctrine of setting aside judgments and reversing cases on the theory of passion and prejudice on the part of the jury. Beauchamp was the paid detective according to plaintiff. With Beauchamp and other witnesses present the plaintiff frankly confessed his pool-playing, his dancing and other things on his cross-examination. These facts disprove the testimony, of the doctors, so defendant urges.

If the jury was aroused to the point of passion and prejudice (which we do not believe), Beauchamp's conduct was a moving cause. But the fact is, that if plaintiff was as seriously injured as the evidence of the plaintiff tended to show, and as the jury might have well found, the original verdict was not so much out of the way in amount. For eighteen months plaintiff was unable to do anything, and a mere loss of wages would run to $3500 at an average of $175 per month. His expectancy was thirty-eight years. Prior to working for the railroad he got $100 to $125 per month as clerk in a general store. If he can get this or similar employment now, at $125 per month, we have a decrease in earning capacity of $600 per year. Future earnings should be measured by their present cash value. For one rule of calculation of such earnings see Gill v. Ry. Co., 302 Mo. 317. To the cash value of future earnings must be added $3500 for loss up to date of trial. Add to this the damages for physical pain and mental anguish, and it cannot be said the present judgment is excessive. Indeed it is under, rather than over, the average judgment for injuries such as the jury might have found that plaintiff had suffered.

We find no error in this case, and the judgment is affirmed. All concur.