[1] This is an action by the plaintiffs, husband and wife, to recover from the defendant loss and damage to personal property and effects by fire under a fire insurance policy. A verdict and judgment were rendered in favor of the plaintiffs in the sum of $1750, plus $439.84 interest, $175 penalty, and $500 attorney's fees, making a total judgment of $2,864.84. The defendant has appealed.
[2] The petition alleged the issuance of the policy, its contents, a removal permit attached, the effectiveness of the policy on January 16, 1944, the date of the fire, the ownership of the property lost or damaged by the fire, and its value of $1750. It was further alleged that the plaintiffs had fulfilled all of the conditions of the policy on their part and had given notice and proof of the fire and loss, as required thereby, and despite repeated demands for payment, the defendant had unreasonably, unlawfully and vexatiously refused and failed to pay, whereby plaintiffs were compelled to employ counsel to institute this action, and to suffer the additional damage of $175 by such delay, and to expend $500 for counsel fees. The plaintiffs prayed for judgment for $1750, with interest thereon at 6 percent from April 10, 1944, plus the additional sum of $175 as damages for vexatious delay, and for attorney's fees of $500 incurred.
[3] The answer admits the issuance and effectiveness of the policy but generally denies all other allegations of the petition. Defendant further alleged that plaintiff Raymond F. Cass deliberately and intentionally caused the fire for the purpose of both plaintiffs collecting the insurance and defrauding the defendant, thereby rendering the policy of insurance void before and at the time of the fire, and that the plaintiffs failed within 60 days after the fire, as required by the policy, to render a statement regarding the time and origin of the fire, the interests of the plaintiffs in the property destroyed or damaged, the cash value thereof, and the amount of such loss. It alleged that plaintiffs furnished a sworn paper purporting to be a proof of loss, signed by plaintiff Raymond F. Cass, and that the same was fraudulent and false in that it stated the fire did not originate by any act, design or procurement on the part of the affiant, and that there were no articles mentioned in the proof of loss except such as were in the building and damaged by the fire, and that no property was saved or had been concealed. The answer further alleged that the policy required the insured to submit to examinations under oath pertaining to any such loss, and that plaintiffs, although requested to appear therefor, failed and refused to appear for such examination. *Page 407 
[4] The plaintiffs, with their two small children, were living at the premises in question in Kansas City, Missouri. The building was a duplex and the plaintiffs occupied the second floor. The insurance policy had originally been written to cover the property at a former address and, by rider attached, had been changed to cover the property located in the premises first mentioned. The issuance of the policy and its effectiveness as of the date of the fire are not in dispute.
[5] The plaintiff Raymond F. Cass testified that after dinner at his home on Saturday evening, January 15, 1944, he telephoned a friend, a Mr. Hersh, requesting permission that the plaintiff bring some things to store in Mr. Hersh's garage. The plaintiffs had no garage. Permission being obtained, the plaintiff Raymond F. Cass moved an auto trunk and several pasteboard boxes containing such articles as overalls, linen, dishes, and used clothes of value not to exceed $20 to the Hersh garage. He said he had previously kept things in the basement or the garage of the above Mr. Hersh, such as canned fruit and other articles for which plaintiffs had no room for storage in their various places of residence.
[6] Plaintiff Raymond F. Cass stated that while at the home of Mr. Hersh he visited with that family until about 11:00 o'clock that evening. From there he returned to his home not far distant. He noticed nothing unusual at that time. After sitting in the living room a short while reading or listening to the radio, he heard a noise. He investigated the kitchen and back porch and, finding nothing wrong, he returned to the living room. He then smelled smoke and, upon investigation, found that it was coming from the open closet door in the children's bedroom. In the ceiling of the closet there was a trap door leading to the attic. He removed the lid and found the attic was on fire. He turned on the lights, awakened his wife and together they quickly got the children up and carried them out of the apartment and into the plaintiffs' car, which was parked in front of the residence. While his wife was dressing the children in the car he ran to the house of a next door neighbor and called the fire department. The firemen soon arrived and shortly thereafter the plaintiffs called a cab and Mrs. Cass and the children were taken to the home of her husband's sister for the night. Later, Mrs. Cass and the children moved to temporary quarters in Kansas City, Kansas, and Mr. Cass obtained a room in the Royce Hotel in Kansas City, Missouri. The next day, Sunday, both returned to the apartment and removed some clothing and other effects not damaged. The fire was extinguished in a few hours. On the following Monday morning the plaintiffs prepared a list of the items destroyed or damaged in the fire, and gave it to Mr. Miner, an adjuster for the defendant.
[7] In the course of his direct testimony Mr. Cass testified that shortly after his graduation from high school he was arrested for setting fire to his home in Kansas and plead guilty to fourth degree arson, was committed to the Hutchinson, Kansas reformatory therefor, served eleven months of the sentence and was then paroled. On cross-examination he admitted that after the fire in question he was asked by a fire investigator if he had also at one time been convicted of stealing tools and wood. He answered: "He asked me those questions. I said, `No, sir, I have not been convicted of it'".
[8] Raymond F. Cass further testified that he received a letter dated January 26, 1944, from Mr. Miner, requesting him to bring the list of lost or damaged articles to Mr. Miner's office; that he prepared such a list which totaled $1762, and delivered it to Mr. Miner. After going over the list, item by item, he testified that Mr. Miner agreed to settle the loss for $1408, and a sworn proof of loss in that amount was made by Mr. Cass. Mr. Cass testified that after signing the sworn statement, Mr. Miner told him that he did not intend to settle the claim for any amount, and that "We are going to put you in the penitentiary. In fact, I got some men waiting in the hall to pick you up". Mr. Cass testified that as he left the hall he was placed under arrest by the police.
[9] In further reference to the fire plaintiff Raymond F. Cass testified that when they moved into the apartment there was a *Page 408 
burned place under the kitchen stove. He smelled no odor of gasoline or oil before discovering the fire. He knew that there was a floor mop in the kitchen but he smelled no odor from it. He had a five gallon gasoline can on the front porch, but it was empty. He explained that he had brought gasoline in it from his father's farm during the period that gasoline rations were in effect. He said his wife had helped him pack the small automobile trunk and the several boxes which had been taken over to Mr. Hersh's garage the evening of the fire. He said that when he received the letter from the attorney, asking him to submit to an examination under oath that he was informed that the attorney did not wish to see him on the date stated in the attorney's letter. Mrs. Cass had received a similar letter, but could not leave the children.
[10] G. A. Hersh testified for the plaintiffs as to the bringing of the boxes to his garage for storage by Mr. Cass and that he was present later when they were opened in the presence of Mr. Cass and detectives. He corroborated the plaintiffs in a general way as to the slight value of the contents.
[11] Mrs. Cass told of packing the trunk and cartons with articles which her husband, on the evening of and prior to the fire took to the Hersh garage for storage. She described the articles as consisting of "old things, clothes to make over for the children. There was an old set of silver, as it was brought out. I had my regular silver; my school diploma was in the box of things, and I had some old pictures. I never owned any handpainted things in my life. I mean, dishes, and there may have been some children's shoes that they had outgrown. I don't know about that. It was mostly old things too good to throw away. We didn't have a place to put them". She said the apartment was originally provided with gas lights, and later electric wires were put through the gas pipes. The fixtures were ceiling fixtures. The apartment, she said, always smoked because the hot air furnace always smoked. On the night of the fire she and the children had gone to sleep and she was awakened by her husband asking if she smelled smoke. She described how they awoke the children, grabbed them up with some clothing and ran out to the car in front of the apartment. She corroborated her husband as to going to the neighbor's house, calling the fire department, calling a cab and moving to his sister's home for the night, and later to her mother's home. She went back to the apartment the day after the fire and "everything was in a terrible mess". She helped make up the list of articles destroyed or damaged. She stated that the amount of $1764.48 was reasonable for the damage done, that the value of all the property in the apartment at the time of the fire was around $4000. The insurance had originally been issued when plaintiffs lived at 4108 East 6th Street, across from her husband's home. She did not go to the insurance attorney's office because they planned for her husband to go as she had to stay with the children. They had no chattel mortgage unpaid at the time of the fire. She explained the gasoline can as her husband had on the stand; she said she thought it was entirely empty at the time in question. There was also evidence that $500 was reasonable as attorney's fees for the prosecution of this case.
[12] There was evidence on the part of witnesses for the defendant tending to show that there were three holes in the kitchen when the fire department arrived, and a fire in each hole, and no connection between them, calculated to spread the fire from one to the other; that there was also a fire in the northwest bedroom, wholly unconnected with the others, and a hole in the door in the kitchen, and some plastering torn out. There was also testimony that there was a mop found in the kitchen which was burning, and there was a strong odor from it of kerosene or gasoline. Firemen testified that there was a heavy odor of coal oil or gasoline in the apartment as they entered it. The flue was found in good condition. A neighbor lady saw the plaintiffs carrying some bundles to their car the evening of the fire and later in the evening Mr. Cass came to her home and asked to use her `phone to report a fire. Later the plaintiffs brought the children to her home and from there Mrs. Cass and the children took a cab to some other quarters. *Page 409 
[13] The District Chief of the Fire Department requested that the arson detail of the Police Department investigate the cause of the fire. Detectives testified that in the presence of Mr. Cass and Mr. Hersh they examined the small trunk and bundles in the Hersh garage and found therein two lanterns, some silverware, hand-painted china, doilies, high school diploma, family pictures, sheets, pillow cases, work clothes children's shoes, and a coat. There was also a sewing kit, electric heating pad, electric fan, and a few towels. Detectives testified that they did not arrest Mr. Cass just outside of Mr. Miner's office, but on the street nearby. They had learned from some source that he would be in that area on that day. There was evidence that defendant's attorney had written plaintiffs, requesting an examination under oath, and that neither appeared, but that Mr. Cass had stated that his attorney would have to be consulted; that the attorney refused to produce plaintiffs.
[14] The nature of the points on this appeal does not require a statement of the evidence in greater detail. At the close of all the evidence the defendant moved for a directed verdict, which was refused. It thereupon filed a plea in abatement, requesting that the cause be abated because of the failure of plaintiff Raymond F. Cass to submit to examination under oath as required by the policy, and for the failure and refusal of plaintiff Marjorie W. Cass to submit to a like examination. The plea was refused by the court.
[15] The instructions of the court having been given, the verdict of the jury and the judgment were for the plaintiffs, as hereinbefore stated. Motion for new trial was duly filed and overruled.
[16] Appellant's first point is that the court erred in granting the plaintiffs' Instruction 1-A. That instruction, in substance, told the jury that if they found from the evidence that on January 16, 1944, there was a fire in the premises occupied by the plaintiffs, that personal property of the plaintiffs was destroyed by the fire, that plaintiffs notified defendant of such fire and the loss or damage, that plaintiffs submitted to defendant proof of said loss, if any, as required by the policy of insurance, then the verdict must be for the plaintiffs and against the defendant, and the jury might also allow interest at 6 percent from January 29, 1944, "unless you further find from the evidence that the plaintiffs intentionally and for the fraudulent purpose of collecting the insurance sued upon, set the fire mentioned in evidence". (Italics supplied.)
[17] It is first urged that the above instruction ignores the defense of the failure and refusal of the plaintiffs to submit to examination under oath which, it is stated, was supported by substantial evidence. Secondly, appellant complains that the instruction ignores its defense of false swearing by the plaintiffs in their proof of loss, as to which, it is claimed, there was substantial evidence. Thirdly, appellant contends that the use of the word "plaintiffs", above italicized, was erroneous, which complaint we shall discuss more fully hereinafter.
[18] The objection to Instruction 1-A at the trial was general only. However, in appellant's motion for new trial the sole objection assigned thereto was the specific objection that the instruction required the jury, in order to find for the defendant, to find that "plaintiffs" intentionally and deliberately set the fire, whereas under the pleadings, it is claimed, it was sufficient to defeat recovery if the jury found that plaintiff Raymond F. Cass alone set the fire, as aforesaid, in order that both might collect the insurance. Under Rule 3.23, "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for new trial". The exceptions noted in the rule have no application here. Since, therefore, appellant's first and second objections to Instruction 1-A were not presented to the trial court either by a general or by a specific assignment in the motion for new trial, the same are not properly before us for appellate review. See, also, Civil Code, Section 140, Mo.R.S.A. § 847.140.
[19] As to appellant's third objection to Instruction 1-A, it is that there was never any contention that Mrs. Cass set the fire, and that by the use of the plural "plaintiffs" in the last clause of the instruction, the jury was erroneously told that it was necessary *Page 410 
for it to find that both plaintiffs set the fire, before the jury could find for the defendant. The policy provides that "This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject matter thereof, whether before or after a loss". It also provides that the "insured" shall furnish notice and supply inventory of loss and submit to examination under oath, etc. The petition alleged that "plaintiffs duly fulfilled all of the conditions of said insurance on their part and the giving of notice and proof of the fire and loss as required by the policy". The general denial of the answer denied this and made an issue thereof in the case. The answer further alleged that "plaintiff Raymond F. Cass deliberately and intentionally caused the fire in question for the purpose of both plaintiffs collecting the insurance upon said property and thus defrauding the defendant and by reason thereof said policy of insurance was void at and before the time of said fire". The answer further charged the "plaintiffs" with furnishing a false and fraudulent statement and proof of loss sworn to by plaintiff Raymond F. Cass.
[20] If the alleged act of the insured Raymond F. Cass in setting the fire or by fraudulent proof of loss voided the policy as provided by its terms and as alleged in the answer, it did so as to the insured Marjorie W. Cass only on the theory that such act of one insured would be the act of both. Such is the effect of the policy under the defendant's pleadings and present contention. Under the evidence and the pleadings it was not error to submit to the jury in Instruction 1-A the issue as to whether the "plaintiffs" had intentionally set the fire.
[21] Appellant objects to plaintiffs' Instruction 2. In that instruction the court required of the jury if it found for plaintiffs to assess any property destroyed at the actual value thereof and as to any property damaged to allow therefor "the amount of depreciation of the value of said property caused by fire as shown by the evidence, if so". Appellant contends that "depreciation" of damaged property is not the measure of damage thereto but the proper measure is the difference between the fair and reasonable market value immediately before the fire and immediately thereafter. The policy provides that "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused * * *". The rule asserted by appellant is well established. Security Printing Co. v. Conn. Fire Ins. Co., 209 Mo.App. 422,240 S.W. 263; Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903. The statute, Sec. 5932, R.S.Mo. 1939, Mo.R.S.A., which governs the measure of damages in such cases requires the payment of "a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured." The words of the policy, of course, did not contemplate the "depreciation" caused by the fire itself. But the statute does not require the measure of damages to be stated in any particular words, but requires a sum "equal to the damage done". While the instruction at hand may be unusual and inartificially drawn, it does not depart materially from the rule as expressed in the cases cited. The amount called for by the instruction is "the amount of the depreciation of the value of the propertycaused by the fire". This can only mean the difference in the value immediately before and after the damage by the fire. The use of the words "depreciation caused by the fire" in the sense of damage or partial destruction by the fire, while unusual and perhaps to be criticized, is not error. It is true, too, that the instruction did not specify that the value should be the reasonable market value, but it was proper as far as it went and if the defendant wished further instructions on the subject it was its duty to request the same. Clark v. C. R. I. P. R. Co., 318 Mo. 453, 300 S.W. 758; Wheeler v. M.-K. T. R. Co., Mo.App., *Page 411 
205 S.W.2d 906; Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S.W.2d 570; Davis v. K. C. P. S. Co., 223 S.W.2d 1, this court, and not yet reported [in State Reports].
[22] Appellant asserts that there was no evidence that the defendant's refusal to pay the loss was vexatious and without reasonable cause; that the issue of penalties was not substantiated and should not have been submitted to the jury. According to the defendant's evidence the following facts were known by or represented to defendant to be true: that several cartons of personal effects had been removed from the apartment by the plaintiff a few hours before the fire and stored elsewhere; that the apartment smelled of kerosene or gasoline when the Fire Department arrived; that there was fire burning from several disconnected outlets in the kitchen and bedroom; that there was a burning mop in the kitchen which smelled of kerosene or gasoline; that there was an empty gasoline can on the porch; that the contents of the removed cartons were later shown to include silverware, hand-painted china, diplomas, family pictures and other articles of monetary or sentimental value; that the police had ordered an inquiry into possible incendiary cause of the fire; that neither of the plaintiffs had appeared, upon request to do so, to submit to oral examination upon oath; that the plaintiff Raymond F. Cass had at one time been charged with arson in the fourth degree for setting fire to a house in Kansas, had pleaded guilty thereto and had served eleven months of his sentence; that he had evasively denied, after the fire in question, that he had also been convicted of theft of wood and tools. Mr. Cass had admitted his removal of the cartons before the fire and also his previous conviction of arson in Kansas.
[23] The penalty statute in question must be strictly construed. Vexatious delay cannot be assumed by a verdict adverse to the defendant. Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 416, 210 S.W. 37. In our opinion, the facts so shown to have been known by or represented to the defendant warrant no other conclusion except that the defendant had reasonable cause to deny payment of the loss and was entitled to defend the claim without penalty as for vexatious delay. Rozell v. North British Merc. Co., 216 Mo.App. 168, 257 S.W. 520. The issue of the penalties should not have been submitted to the jury.
[24] Appellant's fourth point of error is that plaintiffs' Instruction 4 was erroneous. This instruction told the jury that it was defendant's burden to prove by a preponderance of the greater weight of the credible evidence that the fire originated by any act on the part of plaintiff Raymond F. Cass with intent to cause the fire and "you are further instructed that if theplaintiff has failed to so prove such fact, then your verdict must be for the plaintiffs and against the defendant on that defense". (Italics supplied.) Appellant contends that the use of the word "plaintiff" above quoted is patently erroneous and is confusing. The use of the word "plaintiff" for "defendant", aforesaid, was obviously inadvertent and did not add to the burden of the defendant. It is unreasonable to believe that the jury literally understood that plaintiffs, under any theory, were required to prove that one or both of them deliberately set the fire. We find the objection to this instruction without merit.
[25] Appellant's last point is that a portion of the argument of counsel for the plaintiffs was prejudicial, and the court erroneously refused to declare a mistrial on account of same. In the course of his argument, counsel for plaintiffs, having charged the defendant with bad faith, said: "Remember, ladies and gentlemen of the jury, when you come back in this room, if you find against this man, God forbid, if you have a fire, you cannot — ". At this point objection was made that the argument was improper. The court sustained the objection declared the statement was improper, and instructed the jury to disregard it. Counsel for appellant moved for mistrial and the court ordered the argument to proceed. It is claimed by the appellant that the quoted part of the argument by counsel for the plaintiffs was an appeal to the passion and prejudice of the jury and did prejudice it and prevented a fair and impartial trial. It will be noticed that the statement *Page 412 
complained of was unfinished and interrupted by the objection. Standing alone, the words are meaningless, except as an exhortation to the jury for a verdict for the plaintiffs. There was, however, a very strong inference that might appeal to the prejudice of the jury. This was a matter resting in the sound discretion of the trial court. We are not prepared to say that the court abused its discretion in its refusal further to declare a mistrial because of the objectionable words, after the rulings made respecting the same, nor are we convinced that a fatal error was thus committed.
[26] If the respondents will, within fifteen days from the filing of this opinion, remit the 10 percent penalty of $175, and the amount of $500 attorney's fee allowed by the judgment, the judgment for $1750, with interest thereon from January 29, 1944, will be affirmed; otherwise, the judgment will be reversed and the cause remanded.
[27] All concur.